PRUDENTIAL SECURITIES, INC., a Delaware corporation, Plaintiff,

v.

Jane Anne EMERSON, Jane Gladden Emerson, Custodian for Jonathan Emerson, and Paul E. Emerson, Defendants.

No. 95–1070–CIV–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Nov. 16, 1995.

Frederick Stewart Schrils, Holland & Knight, Tampa, FL, for plaintiff.

James D. Keeney, Namack, Clark & Keeney, P.A., Sarasota, FL, for defendants.

## ORDER ON PLAINTIFF'S MOTION TO VACATE

KOVACHEVICH, District Judge.

This cause comes before the Court on Plaintiff's Motion to Vacate the Arbitration Award (Docket No. 1) entered in favor of the Defendants on April 5, 1995, by a panel of three (3) arbitrators of the National Association of Securities Dealers, and Defendants' response thereto (Docket No. 15).

### FACTS

Defendants, Paul and Jane Anne Emerson, submitted a claim for arbitration before the National Association of Securities Dealers ("NASD"), and served a notice of those claims on Prudential–Bache Securities, now Prudential Securities, Inc. in April, 1993. (R. 9)[1] The claims submitted for arbitration include a number of allegations of fraud and a claim for damages due to the alleged unsuitability of certain limited partnership investments and two variable appreciable life insurance policies. (R. 7) All of these allegations arose from dealings with Dan Holum, a broker for Prudential Securities Incorporated and Richard Sadowski, an insurance agent for Prudential Life Insurance Company.

In 1985, Jane Anne Emerson contacted Dan Holum, a registered representative and

---

1. All citations to the "Record" of the Arbitration proceedings are signified by the letter "R," fol- lowed by the page number at which the docu- ment or information appears.

agent of Prudential—Bache Securities, Inc. ("Prudential Securities") to talk with him about financial planning. (R. 186) Mrs. Emerson had inherited a sum of money from her father and intended to invest a portion of that money in such a way as to provide for her son's education and for the future retirement needs of herself and her husband. (R. 183, 353, 494) Upon Mr. Holum's suggestion, Mrs. Emerson invested the money in some mutual funds which are not the subject of this dispute. Mr. Holum also sold Mrs. Emerson several limited partnerships which he allegedly fraudulently described as "fixed income type investments." (R. 413–414) These limited partnership investments resulted in a loss to Mrs. Emerson and are the subject of one of the Defendants' fraud and unsuitability claims against Prudential Securities. (R. 194)

Sometime in 1986, both Mr. and Mrs. Emerson went to a Prudential Securities seminar at the invitation of Mr. Holum. (R. 205–206) At this seminar, Mr. Holum introduced the Emersons to a Richard Sadowski. (R. 206) Mr. Sadowski apparently works for Prudential Life Insurance Company but was introduced to the Emersons as simply being "with Prudential." (R. 205–206; 352–357)

In early 1987, Mrs. Emerson went to Mr. Holum's office at Prudential Securities where she met with Mr. Holum and Mr. Sadowski together in order to learn more about single premium life insurance about which she had read in a Prudential Securities newsletter. (R. 206–207, 209, 213) Sometime thereafter, Mr. Holum and Mr. Sadowski visited the Emersons' home together and made a joint presentation of an investment involving two variable appreciable life insurance policies. (R. 207) The Emersons found the proposal to be unacceptable and sent the two away. (R. 209) Mr. Sadowski came back to the Emersons' home on two separate occasions with modified proposals. (R. 209, 211) Ultimately, the Emersons bought two variable appreciable life insurance policies, one for Mrs. Emerson and one for Mr. Emerson. The Defendants claim that these policies were fraudulently described to them as "the same thing" as single premium life insurance policies. (R. 211–212) These policies resulted in a loss

to the Emersons and are the subject of two of the Defendants' fraud and unsuitability claims against Prudential Securities. (R. 7)

All of the Defendants' disputes were submitted to arbitration and a Uniform Submission Agreement was signed by the parties in 1993 in accordance with the NASD Code. (R. 14–17) A panel of three (3) arbitrators of the NASD heard the dispute and issued an award in favor of the Defendants on April 5, 1995. (R. 803–805) The Plaintiff now moves this Court to vacate that award on the ground that the arbitrators exceeded their powers and heard claims that were beyond the scope of the applicable arbitration agreement.

## DISCUSSION

In its motion, the Plaintiff urges this Court to vacate the arbitration award issued on April 5, 1995, because it alleges the award was arbitrary and capricious and in fact "crie[s] out for vacatur." (Plaintiff's Memorandum, at 10). Specifically, the Plaintiff alleges that the arbitrators exceeded their powers by forcing Prudential Securities to defend a claim made by Paul Emerson with whom the Plaintiff claims it did not agree to arbitrate, and that the arbitrators exceeded the scope of the arbitration agreement by forcing Prudential Securities to defend claims made by Jane Anne Emerson and Paul Emerson involving insurance policies which were not the subject of the arbitration agreement with Mrs. Emerson.

■ The federal policy favoring arbitration only applies when the parties have a written agreement evincing their intention to arbitrate. *See Wheat First v. Greene,* 993 F.2d 814 (11th Cir.1993). It is axiomatic that a party cannot be compelled to arbitrate absent a written agreement to do so. As the United States Supreme Court recently held, "arbitration is simply a matter of contract between the parties; it is a way to resolve disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

In this case, the Plaintiff urges the Court to vacate the arbitration award because it alleges that it did not agree to arbitrate the claims of Defendant Paul Emerson. In support of its motion, the Plaintiff asserts that its obligation to arbitrate any claims arises from only two (2) possible sources. First, the Plaintiff cites the written arbitration agreement between itself and its account holders. Second, the Plaintiff cites the National Association of Securities Dealers ("NASD") Code, which obligates member firms to arbitrate customer disputes arising in connection with the business of the firm, and which was incorporated by reference in their arbitration agreement. The Plaintiff argues that neither of these sources obligates it to arbitrate with Mr. Emerson because he was never a customer of Prudential Securities. Rather, the Plaintiff argues that Mr. Emerson was a customer of Prudential Insurance Company because he bought the disputed insurance policy from Mr. Sadowski, an agent of Prudential Insurance Company, not Prudential Securities. Thus, the Plaintiff concludes that it had no obligation to arbitrate the claims of Mr. Emerson and the arbitrators exceeded the scope of the arbitration agreement by forcing it to arbitrate with Mr. Emerson.

Additionally, the Plaintiff urges this Court to vacate the arbitration award because it claims that the arbitrators exceeded the scope of the applicable arbitration agreement when they heard and decided the Emersons' claims involving insurance policies. Specifically, the Plaintiff argues in accordance with the NASD Code, sections 1, 12(a) that it only agreed to arbitrate claims that arose "in connection with the business of" the brokerage firm. *Id.* The Plaintiff argues that it is not in the life insurance business and thus did not agree to arbitrate claims involving life insurance. Further, the Plaintiff argues that even if it were in the life insurance business (i.e., even if the arbitrators concluded that Prudential Securities sold the insurance policies to the Emersons), the insurance claims would have been ineligible for arbitration because the NASD Code, section 1 excludes from arbitration those claims "involving the insurance business of any member which is also an insurance company." *Id.*

The Defendant argues that the true source of the Plaintiff's obligation to arbitrate is The Uniform Submission Agreement signed by Paul Emerson on January 21, 1993 (R. 5) and by John H. Bluher, Vice President, Prudential Securities, Inc. on September 23, 1993 (R. 14–16). That agreement incorporated the Defendants' Statement of Claim by reference and said agreement reads in relevant part:

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim ... to arbitration in accordance with the Constitution, By–Laws, Rules, Regulations and/or Code of the Arbitration Procedure of the sponsoring organization.

(R. 14) The incorporated statement of claim included Paul Emerson as a party in the caption and included the insurance policies disputed by Paul Emerson and Jane Anne Emerson as a subject of dispute. Accordingly, the Defendant argues that the Plaintiff did have a written agreement to arbitrate the insurance claims of both Mr. and Mrs. Emerson since those claims and those parties were included in the Uniform Submission Agreement.

The question of arbitrability is to be determined by the court absent a clear agreement by the parties to have the arbitration panel decide that issue. *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Additionally, an arbitration award may be vacated as being arbitrary and capricious when the award is not grounded in the contract which provides for the arbitration. *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 781 (11th Cir.1993). Accordingly, this Court must examine the parties' various agreements to determine whether any of them encompassed an unequivocal agreement to have the arbitrators decide arbitrability. The Court must then examine the arbitration award to determine whether it was grounded in the parties' agreement to arbitrate. The Court decides these issues based on the United States Supreme Court's recent decision in *First Options Of Chicago, Inc. v.*

*Kaplan,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Because *First Options* is determinative in this case, it merits extensive discussion. The *First Options* case centered around several disputes between First Options of Chicago, Inc. and the Kaplans individually, as well as MK Investments, Inc. (MKI), the Kaplans' wholly owned investment company. The Kaplans and MKI had entered into a "work out" agreement with First Options of Chicago, Inc. embodied in four (4) separate documents wherein First Options cleared MKI's trading account after the 1987 stock market crash. Sometime after entering into the agreement, MKI lost an additional $1.5 million. First Options liquidated certain MKI assets and demanded immediate payment of the MKI debt by the Kaplans personally. When the demands went unsatisfied First Options submitted the matter to arbitration before a panel of the Philadelphia Stock Exchange.

Only one of the four (4) documents embodying the "work out" agreement contained an arbitration clause. That document was signed by MKI, not by the Kaplans personally. Thus, MKI accepted arbitration of the claims involving it. The Kaplans, however, denied that their dispute with First Options was arbitrable because they had not personally agreed to arbitrate those disputes. Accordingly, the Kaplans filed written motions with the arbitration panel to that effect. The panel decided that it had the authority to decide the parties' dispute and did so in favor of First Options. The Kaplans then filed a motion with the Federal District Court asking it to vacate the arbitration award. The Federal District Court confirmed the arbitration award and the Kaplans appealed. On appeal the Court of Appeals for the Third Circuit reversed the District Court's confirmation of the award and found that the Kaplan's disputes were not arbitrable. First Options then appealed to the United States Supreme Court which upheld the Third Circuit's finding that the Kaplan's did not agree to submit the issue of arbitrability to arbitration.

In *First Options* the Supreme Court looked at the very narrow question regarding who should have the primary power to decide whether the parties agreed to arbitrate the merits of certain disputes. "Does the power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)?" *Id.* at ——, 115 S.Ct. at 1923. The answer, the Court said, depends on whether the parties agreed to let the arbitrators decide whether the merits of a certain claim were arbitrable. If the parties did agree to leave that decision to the arbitration panel, then the standard of review on a motion to vacate should be the same deferential standard that courts apply to review any other matter that the parties have agreed to arbitrate. *Id.* However, if the parties have not agreed to leave the decision up to the arbitrators, then the standard of review on a motion to vacate is *de novo* (i.e., the court reviews the issue independently). *Id.* at ——, 115 S.Ct. at 1924.

The *First Options* Court recognized that it may not always be clear whether the parties agreed to submit the issue of arbitrability to the arbitration panel, particularly when the parties agree to the arbitrability of some claims but do not agree to the arbitrability of others, as here. By way of guidance the Court held that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts." *Id.* In Florida, this means that the courts should look to the intention of the parties to determine whether the parties actually intended to submit the arbitrability issue to arbitration.

The *First Options* Court further clarified this rule by adding "an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id. quoting AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Thus, when determining *who* has the primary pow-

er to decide whether a particular claim is arbitrable, there is not a presumption in favor of allowing the arbitrators to decide that issue. However, the Court points out that once the issue of *whether* a particular claim is arbitrable is before the proper tribunal, there remains the long standing presumption in favor of arbitration. *See Id.*

▉ Applying these rules, the *First Options* Court found that the Kaplans did not clearly agree to have the arbitrators decide whether their dispute with First Options was arbitrable and upheld the Third Circuit's vacation of the award. The Court emphasized the fact that the Kaplans had filed a written memorandum with the arbitration panel objecting to its jurisdiction to hear those claims. The Court pointed out that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point." *Id.,* —— U.S. at ——, 115 S.Ct. at 1925. In fact, the Court recognized that forceful objection to the arbitrators' jurisdiction on a certain issue only evinces a desire *not* to have the arbitration panel exercise binding authority over the party on that issue. Additionally, the Court recognized that the Kaplan's presence at the arbitration hearing did not evidence a desire on their part to be bound by the arbitrators decision on the claims affecting them personally. The Court noted that the Kaplans were obviously there not only to object to jurisdiction over the claims against them personally, but to defend the claims against MKI their wholly owned investment company (which claims they agreed were arbitrable). Finally, the Court discounted First Options' arguments that the Kaplans should have used other avenues to get an independent court decision (i.e., by making a motion to stay the proceeding until a ruling on the arbitrability question etc.), that allowing parties to argue arbitrability to the arbitrators yet not requiring them to be bound by the arbitrators decisions would be waste of time and cause delay in resolving disputes and that the Arbitration Act requires a presumption that parties be bound by the arbitrators decision as to arbitrability.

▉ In accordance with the rules set out by the *First Options* Court, this Court now turns to the facts of this case to determine two issues. First, whether Prudential Securities unequivocally agreed to submit the issue of arbitrability of the relevant insurance disputes to the NASD arbitration panel in this case. Second, if not, whether the insurance issues are arbitrable as being within the scope of the arbitration agreement which binds the parties in this case.[2]

The Court finds that Prudential Securities did not clearly agree to be bound by the arbitrators' decision as to arbitrability of the insurance claims. Beginning with its first submission to the NASD, and continuing literally to the close of the arbitration hearings, Prudential Securities strenuously and repeatedly objected to the arbitrability of the insurance issues. In its written answer to the Emersons' statement of claim, Prudential Securities objected to the arbitrability of the insurance claims. (R. 18) Before the hearing, by way of letter to the NASD Prudential asked for a pre-hearing conference to determine the issue of arbitrability of the insurance claims. (R. 37) When the pre-hearing conference was denied, Prudential Securities raised the arbitrability issue as soon as the hearing began and continued to object to the arbitrators' jurisdiction over the matter throughout the hearing. (R. 59, 63, 234, 241, 251, 253, 367, 368, 371) Finally, at the close of the hearing, Prudential objected one last time to the arbitrators' jurisdiction over the insurance matters. (R. 420–421) Prudential Securities' actions throughout the arbitration hearing evince a clear unwillingness to be bound by the arbitrators decision on that point.

Additionally, the fact that Prudential Securities made an appearance at the arbitration hearing does not undercut its position that it did not wish to be bound by the arbitrators'

---

**2.** The only claim brought by Paul Emerson was an insurance claim. Because the Court finds that all insurance claims brought by the Emersons were not arbitrable, the Court need not address Prudential Securities' argument that it was compelled to arbitrate claims made by Paul Emerson with whom it did not agree to arbitrate.

decision on the arbitrability of the insurance claims. Much like the Kaplans in *First Options*, Prudential Securities had already agreed that the claims made by Mrs. Emerson with regard to the limited partnerships sold by Prudential Securities were arbitrable. Obviously, Prudential Securities appeared at the arbitration hearing not only to object to the arbitrators' jurisdiction over the insurance claims, but to defend the claims against it which it agreed were arbitrable (i.e., the securities claims).

■ Likewise, the fact that Prudential Securities signed the Uniform Submission Agreement which included Paul Emerson as a party and the insurance claims by reference does not automatically subject it to the arbitrators' jurisdiction over those disputes. Prudential Securities signed the agreement (which also encompassed Mrs. Emerson's securities claims which it agrees were arbitrable) and then immediately objected to the jurisdiction of the arbitrators to hear those claims included in the statement of claim which it felt were not arbitrable (i.e., the insurance claims). The signing of the submission agreement alone does not constitute a waiver of the Plaintiff's objection to the jurisdiction of the arbitration panel. *See International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783 (3d Cir.1978) (where the fact that both the Union and the Association signed the ECJAC submission form did not constitute a waiver of the Union's jurisdictional objections).

■ Upon examining the Uniform Submission Agreement and the NASD Code incorporated therein by reference, this Court finds that there was no clear, unequivocal agreement to submit the issue of arbitrability to the arbitrators in this case. Nothing in the submission agreement addresses who should determine arbitrability. Likewise, the NASD Code does not explicitly address that issue. Rather, the NASD Code, section 12(b) allows the Director of Arbitration to refuse to arbitrate any claim which is not a proper subject matter for arbitration. That section reads:

Under this Code, the Director of Arbitration, upon approval of the Executive Committee of the National Arbitration Committee or the National Arbitration Committee, shall have the right to decline the use of its arbitration facilities in any dispute, claim, or controversy, where, having due regard for the purposes of the Association and the intent of this code, such dispute, claim, or controversy is not a proper subject matter for arbitration.

In other words, it gives the Director of Arbitration the ability to close the doors to its facilities when it is determined that a particular dispute is not a proper subject matter for arbitration. It does not, however, designate who is to make that determination. Certainly, one would read that section to mean that if a court of competent jurisdiction determined that a particular dispute was not arbitrable then the Director of Arbitration should refuse to hear that dispute. Additionally, one might read that section to mean that the Director of Arbitration has the ability to determine whether a dispute is arbitrable. In fact, this Court might reasonably assume that by virtue of section 12(b) of the NASD Code, the parties in this case agreed to have the arbitrators determine the arbitrability of their claims. This Court, however, is bound by the United States Supreme Court's decision in *First Options* which dictates that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options*, —— U.S. at ——, 115 S.Ct. at 1924 *quoting AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) Additionally, *First Options* requires this Court to apply ordinary state law principals that govern the formation of contracts to determine whether the relevant NASD Code language embodies an agreement between the parties to submit arbitrability to the arbitrators in this case. *Id.*, —— U.S. at ——, 115 S.Ct. at 1924.

This Court cannot say that the language of section 12(b) provides clear and unmistakable evidence that the parties agreed to have the arbitrators determine arbitrability when that section does not expressly give the arbitrators the authority to do that. Florida law provides that the Court is to look to the

intention of the parties when determining whether an agreement to do something exists. *State v. Family Bank of Hallandale,* 623 So.2d 474, 479 (Fla.1993) In this regard, it is very telling that the Defendants in this case presumably did not feel that section 12(b) embodied an agreement between the parties to have the arbitrators determine arbitrability of their claims. In support of their motion, Defendants cite the *First Options* decision and, in fact, quote that case extensively. Thus, the Defendants were aware of the law on this point. However, nowhere in their memoranda did the Defendants argue that section 12(b) evinced a clear intention of the parties to submit the issue of arbitrability to the arbitration panel. Nor did they argue that that language embodied an agreement between the parties to be bound by the arbitrators' decision on that point. It was obviously not the Defendant's understanding or intention that the language of section 12(b) require the parties to submit the issue of arbitrability to the arbitrators. Thus, this Court cannot hold that the Plaintiff intended that section to embody such an agreement absent clear and unmistakable evidence that it was intended as such. In accordance with *First Options* this Court vacates the arbitrators' decision with regard to the arbitrability of the insurance claims of Paul and Jane Anne Emerson because there is not clear and unmistakable evidence that Prudential Securities agreed to submit that issue to the arbitration panel.

 It is now left to this Court to determine whether the claims made by the Emersons involving certain insurance policies were arbitrable. Undoubtedly, in accordance with the Uniform Submission Agreement which it signed and sections 1 and 12(a) of the NASD Code, Prudential Securities agreed to arbitrate claims that arose "in connection with the business of" the brokerage firm. The question then becomes whether the insurance claims arose in connection with the business of Prudential Securities.

*First Options* did not change the long-standing rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Con-struction Corporation,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Likewise, the Court recognizes that a party cannot be compelled to arbitrate a certain claim unless it agreed to do so in writing. *See First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

The record indicates that Dan Holum, an agent of Prudential Securities introduced the Emersons to Richard Sadowski, an agent of Prudential Insurance Company at a seminar being sponsored by Prudential Securities. (R. 206) Mr. Holum introduced Mr. Sadowski as "being with Prudential." (R. 205–206; 352–357) Some time later, Mrs. Emerson went to Mr. Holum's office at Prudential Securities where she met with Mr. Holum and Mr. Sadowski together in order to learn more about the single premium life insurance that she had read about in a Prudential Securities newsletter. (R. 206–207; 209; 213) Finally, Mr. Holum and Mr. Sadowski visited the Emersons' home together to make a joint presentation involving variable appreciable life ("VAL") insurance policies. (R. 207) The Defendants argue in accordance with Mrs. Emerson's testimony that Mrs. Emerson had reasonable grounds to believe and in fact did believe that Mr. Sadowski was also an agent of Prudential Securities. Thus, under the theory of apparent authority and the federal policy in favor of arbitration the Defendants urge this Court to find that the insurance dispute is arbitrable as arising "in connection with the business" of Prudential Securities.

The Plaintiff argues that the Emersons subsequently developed an independent relationship with Mr. Sadowski. He came to their home twice without Mr. Holum with revised versions of the VAL insurance policy proposal. (R. 209; 211) It was Mr. Sadowski alone who ultimately sold the insurance policies to the Emersons and who continued to make representations about those insurance policies to the Emersons. (R. 215, 366) In addition, the statements sent to the Emersons were sent from Prudential Insurance Company and included at least one handwritten note signed by Mr. Sadowski. (R. 224) Most compelling is the fact that the Emer-

sons (upon learning of the alleged fraud being perpetrated against them with respect to the insurance policies) went to Prudential *Life Insurance* Company located in a separate building from Prudential *Securities* to complain about Mr. Sadowski. (R. 242–3, 369) The Plaintiff urges the Court to find that the Emersons knew that Mr. Sadowski was employed by Prudential Insurance Company rather than Prudential Securities and to hold that the Emersons' dispute with Mr. Sadowski did not arise in connection with the business of Prudential Securities and is therefore not arbitrable.

Further, the Plaintiff argues that it relied on section 1 of the NASD Code of Arbitration Procedure which specifically excludes from arbitration those disputes "involving the insurance business of any member which is also an insurance company" when it signed the submission agreement and objected to the arbitrators' jurisdiction over the insurance matters. The Plaintiff admits that it is not an insurance company but argues that if the Court finds that it did sell these insurance policies to the Plaintiff then it is in the business of selling insurance and the claims must be excluded from arbitration in accordance with section 1 of the NASD Code. The Court agrees. If the Court finds that Prudential Securities did hold Mr. Sadowski out as one of its agents and allowed him to sell the VAL insurance policies to the Emersons as such agent then it cannot be said that Prudential Securities was not in the business of selling life insurance, at least with regard to these isolated Defendants. Thus, the claims regarding the insurance policies will be deemed ineligible for arbitration in accordance with section 1 of the NASD Code.

Likewise, if this Court finds that Mr. Sadowski and Prudential *Life Insurance* Company are solely responsible for selling the VAL insurance policies to the Emersons then it cannot be said that the claims regarding those policies arose "in connection with the business" of Prudential *Securities*. The Court need not decide who was responsible for selling the subject policies because the Court finds that regardless of who ultimately sold the policies, the claims regarding those policies are not arbitrable according to the

Uniform Submission Agreement and the NASD Code of Arbitration Procedure which excludes from arbitration those claims involving insurance which are brought against an insurance company. Consequently, this Court vacates the arbitration award to the extent that it was based on the claims involving insurance policies and the claims of Paul E. Emerson. The Court confirms the award to the extent that it was based on the securities claims of Jane Anne Emerson and remands the case to the NASD arbitration panel to specify the amount of the award attributable to the securities claims of Jane Anne Emerson.

**ORDERED** that Plaintiff's Motion to Vacate be **Granted** with regard to the insurance claims of Paul and Jane Anne Emerson, **Denied** with regard to the securities claims of Jane Anne Emerson and that the case be **Remanded** to the NASD Arbitration Panel for allocation of its previous arbitration award consistent with this opinion.